

FILED & ENTERED

APR 17 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY milano     DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Ashot Gevork Egiazarian<br><br><br><br><br>Debtor(s). | Case No.: 2:25-bk-13838-BB<br><br>CHAPTER 7<br><br>**ORDER DENYING DEBTOR'S MOTION FOR RECONSIDERATION OF ORDER DENYING CONVERSION**<br><br>(No hearing required) |

The Court, having reviewed and considered the April 13, 2026 motion of debtor Ashot Gevork Egiazarian (the "Debtor") for reconsideration of its April 2, 2026 order denying his motion to convert this case to a case under chapter 11 of the Bankruptcy Code (the "Denial Order"), hereby makes the following findings of fact and conclusions of law:

1. The "new evidence" that the Debtor claims is sufficient to warrant reconsideration of the Denial Order has no bearing on whether this case should be converted to a case under chapter 11.

2. The Debtor provides the following quote from an email sent by counsel for the chapter 7 trustee (the "Trustee") on April 12, 2026:

> We're clearly doing something right, and seem to have hit a nerve. If nothing else, this should help us to get a deal finalized with Natalia – she can't really think that we're conspiring with the Debtor at this point.

3. The Debtor asserts that this communication reflects "ongoing undisclosed settlement negotiations with Natalia Tsagolova" that "were not disclosed on the record at the April 2 hearing and materially affect the Court's assessment of the neutrality of the Chapter 7 administration, the feasibility analysis, and the appropriateness of conversion." **No, it doesn't.**

   a. The settlement negotiations referenced in the foregoing email cannot in any sense be described as "undisclosed." They have been repeatedly disclosed to the Court and other parties in interest at hearings held in this chapter 7 case. Counsel for the Trustee and Ms. Tsagolova have been telling the Court for months that they are engaged in negotiations and are close to reaching a settlement.

   b. The existence of these negotiations do **not** affect the Court's assessment of the neutrality of the Trustee's administration. Disputes exist as between the estate and Ms. Tsagolova. Whenever disputes exist, either those disputes can be resolved consensually, if the parties are able to negotiate a resolution of their disputes, or they can be resolved through litigation. A consensual resolution of disputes ordinarily saves both time and money for all parties concerned and is generally the more desirable alternative for everyone. If parties are unable to negotiate a consensual resolution of a dispute without assistance, the Court often orders the parties to engage in mediation in an effort to help them negotiate a settlement. There is nothing inappropriate about the Trustee's attempts to negotiate a settlement

with Ms. Tsagolova, and there is nothing untoward about the fact that the Trustee has not kept the Debtor apprised of the status of these negotiations.  The Debtor is not entitled to this information.

    c.  The fact that these negotiations are moving forward and appear likely to result in a proposed settlement (that will be presented to the Court for approval) does **not** make the Court believe that this case should be converted to chapter 11 or that the Trustee should be replaced with someone else.  The progress of these negotiations underscores and reinforces the Court's conclusion that the Trustee has been handling the administration of this estate in an appropriate and desirable manner.

4.  The Debtor also points to an email from special counsel John Genga (Exhibit N) in which Mr. Genga writes, "I assume this is legally meaningless, but WTF is going on here?"  The Debtor claims that this reaction confirms that "even the Trustee's own counsel was surprised by the scope of the documented conflicts."  **No, it doesn't.**

    a.  From the context, it is the Court's understanding that the "this" referenced in Mr. Genga's email was the Debtor's motion to disqualify special counsel Loucas Haviaras and his firm (Docket No. 217).

    **b.**  By saying that he assumes that the disqualification motion is "legally meaningless," Mr. Genga means that the motion was frivolous.  **The Court agrees.**

    c.  By asking "WTF is going on here," Mr. Genga was asking the Trustee, Why is the Debtor doing this?  What is he trying to accomplish?  Mr. Genga is wondering why the Debtor would act this way.  He is not expressing concern over "facts" alleged by the Debtor.

5.  The Debtor complains that there were procedural irregularities at the April 2 hearing on this motion sufficient to justify reconsideration or a limited

evidentiary hearing because the Debtor, who describes himself as a native Russian speaker with limited English proficiency, claims to have received "meaningful interpretation for approximately two minutes out of a hearing lasting approximately one hour."

6. The Court provided a Russian language interpreter who participated in the April 2 hearing by telephone.  The court repeatedly asked the translator to translate the Court's comments into Russian for the benefit of the Debtor and listened for an extended period while the translator communicated her remarks to the Debtor and the Debtor's remarks to the Court.  The Court takes judicial notice of the fact that the translation process continued for much, much longer than 2 minutes.

7. The Court is not in a position to assess the quality of the translations provided in either direction, and the declaration provided by the Debtor does not address this issue.  However, the Court notes that all three of the motions that the Debtor has filed in the case within the last few weeks – his motion to convert; his motion to disqualify counsel; and this motion for reconsideration – were written **in English** by someone with a high level of proficiency in the language.  If these documents were not written by the Debtor, and the Debtor is not satisfied by the quality of the translation services available through the Court, he should provide his own translator at future hearings or hire counsel who is proficient in English to advocate on his behalf.

8. The Debtor reports further in the Motion that, after the Court announced its ruling on April 2, Suren Egiazarian's son represented that Suren controls approximately 30 percent of the entity or entities that own the Moscow shopping mall, and that any buyout transaction would not be able to proceed without Suren's consent. Based on this, the Debtor argues that, "If such a holder can block implementation of a transaction, Chapter 7 liquidation mechanics are structurally constrained."  Once again, the Debtor is confused

as to how things work in bankruptcy.  Any constraints that may exist on transactions that may be accomplished without Suren's consent apply to the same extent in chapter 11 as they do in chapter 7.  None of this suggests that conversion would be a desirable alternative.

9. According to the Motion, the Debtor "does not seek to act as a debtor-in-possession."  What he really wants is to use the conversion as a mechanism for replacing the existing Trustee with a different trustee.  See Motion at p. 7, lines 17-20.  A motion to convert to chapter 11 is not the appropriate vehicle for replacing a trustee, and the Debtor has not identified any facts or circumstances sufficient to suggest that the existing trustee ought to be replaced.

10. This is a complex case, with multiple assets in multiple countries as to which title is disputed.  The Debtor, who claims to have only limited proficiency in English, does not currently reside in the United States and does not have counsel to represent him in a chapter 11 case.[1]  The Debtor has admitted to having a history of hiding his assets from creditors by putting them in the name of nominees and has filed schedules that demonstrate in black and white that the Debtor has not been forthcoming about his true income stream or how he has been able to pay his living expenses.

11. On these facts, the Court finds that:

    a.  the Debtor is not acting in good faith in requesting that this case be converted to chapter 11;

    b.  the Debtor has no prospect of confirming a plan of reorganization within a reasonable period; and

    c.  it was therefore appropriate for this Court to deny his request to convert this case to a case under chapter 11.

---

[1] The Disclosure of Compensation form that Levene, Neale, Bender, Yoo & Golubchik, LLP filed in this case (see p. 44 of Docket No. 15) provides that, with the exception of the four items identified in section 6 of the form (which relate to preparing schedules and appearing at 341(a) meetings) "all other matters are excluded."

/ / /

In light of the foregoing,

**IT IS ORDERED** that the Debtor's motion for reconsideration of the Denial Order be and hereby is **DENIED.**

# # #

Date: April 17, 2026

Sheri Bluebond
United States Bankruptcy Judge